IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN E. TARPLEY,                          *

      Plaintiff,                          *

v.                                          *          Civil Action No. GLR-15-735

GOVERNOR LARRY HOGAN, et al.,               *

      Defendants.                          *

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 18) and Plaintiff Steven Tarpley's Motion for Reconsideration (ECF No. 17) and Motion for Appointment of Counsel (ECF No. 31). Having reviewed the Motions and supporting documents, the Court finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2016). For the reasons stated below, the Court will grant Defendants' Motion and deny Plaintiff's Motions.

## I.      BACKGROUND

Tarpley, a white male, is a prisoner confined to North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. Tarpley shares a cell with one other inmate but maintains it is designed to accommodate only one inmate. He states there are no provisions to secure personal property and the cell is equipped with one power outlet, one television cable outlet, and room for only one person's appliances. The second inmate is required to store his belongings on the floor. Tarpley maintains double-celling inmates at NBCI creates an unacceptable risk of violence and is done for the purpose of inducing one inmate to harm the other.

Tarpley further states inmates are routinely forced to accept cell assignments with other inmates who openly express intent to harm them. He claims the threats are commonly made by

members of prison security threat groups such as the Aryan Brotherhood, Black Guerilla Family, Dead Men Incorporated, and Murder, Inc. Tarpley states custody staff refuses to acknowledge, or are deliberately indifferent to, the fact that members of these groups refuse to accept a cellmate who is not also a member of the same group. Tarpley also maintains inmates with severe and untreated mental illness are routinely placed into cells with inmates who do not suffer such an illness. As a result, the cellmate assigned with a mentally-ill inmate is subjected to bizarre and sometimes dangerous behavior while the mentally ill cellmate is experiencing active symptoms of their illness.

On September 24, 2007, Tarpley claims that he was stabbed in the eye by a gang member, causing blindness. He states the assault was committed because he was not a member of the gang. Tarpley also claims he suffered two attempted rapes and has been forced to share a cell with the known perpetrator. He states he has been forced into housing assignments where a confrontation was certain due to his lack of affiliation with a prison gang and was then cited for a rule violation when he was forced to defend himself. Tarpley claims this occurred while confined at NBCI on April 11, 2011, November 5, 2011, December 24, 2012, February 19, 2014, and January 10, 2015. Tarpley also described violent incidents where he was not involved. On September 25, 2012, Tarpley states that an unnamed inmate was seriously injured by his cellmate after making requests to be reassigned to another cell. On September 27, 2012, another unnamed inmate was killed by his cellmate under similar circumstances. On February 10, 2013, an inmate was killed by his cellmate while assigned to administrative segregation.

On March 16, 2015, Tarpley initiated this action claiming the practices regarding cell assignments violate his rights under the Eighth Amendment and Due Process Clause of the Fifth and Fourteenth Amendments. (ECF No. 1). As relief, Tarpley seeks a declaratory judgment

finding the housing practices at NBCI are unconstitutional, an order mandating the reduction of the inmate population to one inmate per cell, an injunction prohibiting Defendants from increasing the population size above 1,024 inmates, and an award of costs.

On May 11, 2015, Tarpley filed a Motion for Preliminary Injunction asserting that he has been repeatedly exposed to a serious risk of harm based on an alleged practice of assigning cellmates who are openly hostile to him because of his race. (ECF No. 5). He maintained he had been put into cells with members of the BGF, black supremacists, and inmates with severe mental illnesses who are inadequately treated, despite alerting correctional staff that his safety was being threatened. Tarpley maintained he had been assaulted several times as a result of custody staff regularly placing him in housing situations with hostile cellmates, which he suffers from a degenerative disorder which seriously impairs his ability to defend himself, and that one of the assaults caused him to lose his eyesight. On July 30, 2015, the Court denied Tarpley's Motion because he admitted that his current cellmate did not pose a threat of harm to him. (ECF No. 11).

On October 23, 2015, Tarpley filed a Motion for Reconsideration of the Court's July 30, 2015 Order. (ECF No. 17). On November 9, 2015, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 18). On January 8, 2016, Tarpley filed an Opposition to the Motion. (ECF No. 24). On May 31, 2016, Tarpley filed a Motion to Appoint Counsel. (ECF No. 31).

## II.    DISCUSSION

### A.  Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

#### 1.  Standard of Review

In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true.  See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).  But "[w]hen matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(d)).  Under Rule 56(a), the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247–48.

A "material fact" is one that might affect the outcome of a party's case.  Id. at 248; see JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing

Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993).

Defendants rely on exhibits attached to their Motion.  Because the Court will consider Defendants' exhibits, the Court must convert the Motion to Dismiss to a Motion for Summary judgment.[1]

As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Kipps v. Ewell, 538

---

[1] "[N]o formal notice of conversion by the district court is required in cases where it is apparent that what is nominally a Rule 12(b)(6) motion to dismiss is subject to conversion to a summary judgment motion—for example, where the motion is captioned in the alternative as a motion for summary judgment and affidavits are attached to the motion." Carter v. Balt. Cty., 39 F.App'x 930, 933 (4th Cir. 2002) (per curiam).

F.2d 564, 566 (4th Cir. 1976).  A verified complaint, however, is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.   Davis v. Zahradnick, 600 F.2d 458, 459–60 (4th Cir.1979).   Here, Tarpley's verified Complaint and other pleadings, which describe the allegedly unconstitutional prison conditions, are based upon his own personal knowledge and Tarpley swears them under the penalties of perjury.  (ECF Nos. 1, 17, 24).  Accordingly, the Court will construe them as affidavits for purposes of determining whether he generates a dispute of material fact for his claims.

### 2.  Analysis

#### a.  Exhaustion of Administrative Remedies

Defendants argue that Tarpley failed to exhaust his administrative remedies.   The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e (2012).  The PLRA's exhaustion provision requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).  Exhaustion is mandatory and the Court may not consider a claim that has not been exhausted.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016); Jones v. Bock, 549 U.S. 199, 219–20 (2007).

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  See

Jones, 549 U.S. at 215–16 (2007); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.2d 674, 682 (4th Cir. 2005).    Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials."   Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).

In Maryland, the administrative remedy process ("ARP") involves a three-step process. In order to show failure to exhaust, the defendant must demonstrate that the plaintiff failed to appeal his grievance through all three steps in the administrative process.  Filing a request for administrative remedy with the warden of the prison is the first of three steps in the ARP process. See Md.Code Regs. § 12.07.01.04 (2016). The ARP request must be filed within thirty days of the date on which the incident occurred, or within thirty days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.   Id. § 12.07.01.05A.  If the request is denied, a prisoner has thirty calendar days to file an appeal with the Commissioner of Correction.  Id. § 12.07.01.05C.  If the appeal is denied, the prisoner has thirty days to file a grievance with the Inmate Grievance Office ("IGO").  See Md.Code Ann., Corr.Servs. §§ 10-206, 10-210 (West 2016); Regs. §§ 12.07.01.03, 12.07.01.05B.

Complaints are reviewed preliminarily by the IGO.  See Corr.Servs. § 10-207; Regs. § 12.07.01.06A.  If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  Corr.Servs. § 10-207(b)(1); see Regs. § 12.07.01.07B.  The order of dismissal constitutes the final decision of the Secretary of the Maryland Department of Public Safety and Correctional Services for purposes of judicial review. Corr.Servs. § 10-207(b)(2)(ii).  The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his remedies.  See id. § 10-210.  But, an inmate need

not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement.  See Md.Code Ann., Cts. & Jud.Proc. § 5-1003 (West 2016).

Tarpley has shown that his ARP complaint was initially dismissed by the ARP Coordinator at NBCI.   (ECF No. 24-3 at 8).   Tarpley appealed the dismissal to the Commissioner's office, the dismissal was reversed, and the Commissioner directed the Warden to process the ARP complaint in accordance with applicable directives.  Id. at 12.   Once remanded, however, Richard Roderick, Chief Case Manager, again dismissed the ARP as one attacking a case management recommendation.  Id. at 13.   When Tarpley again appealed the dismissal to the Commissioner's office, Assistant Commissioner Randy Watson upheld the dismissal.  Id. at 17.   Tarpley then refused to provide "case management paperwork" to the IGO for its preliminary review.  Id. at 20.   The IGO then dismissed his appeal.  Id.   Tarpley appealed the IGO's administrative dismissal to the Circuit Court for Allegany County, where the dismissal was affirmed.   Id. at 21.   The Court, therefore, concludes that Tarpley exhausted his administrative remedies, permitting the Court to consider his claims.

### b.  Constitutional Claims

Tarpley alleges an Eighth Amendment claim of failure to protect from violence.  In order to prevail, Tarpley must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm.  See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987) (citing Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979)).

> Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

Farmer v. Brennan, 511 U.S. 825, 833–34 (1994) (citations omitted).  For a prison official to be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement, "the official [must know] of and disregard[] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837; see also Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997).  A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established.  Farmer, 511 U.S. at 834, 837.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury' or substantial risk to either injury."  Danser v. Stansberry, 772 F.3d 340, 346–47 (4th Cir. 2014) (quoting Farmer, 511 U.S. at 834).  The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."  Helling v. McKinney, 509 U.S. 25, 36 (1993).  Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety."  Farmer, 511 U.S. at 834 (citations omitted).  Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn.  Id. at 837.  Where prison officials responded reasonably to a risk, they may be found free of liability.  Id. at 844.

Tarpley's main assertion against Defendants is that Defendants violate his Eighth Amendment rights because NBCI has a policy of double celling inmates in cells too small to

adequately accommodate them, while posing a high risk of violence to each other.  To prove the

cells are too small for two inmates, Tarpley argues NBCI's practice of double celling violates a

Maryland regulation and an American Correctional Association ("ACA") guideline.

Specifically, Tarpley relies on a provision within the Code of Maryland Regulations that

describes the features of super-maximum security institutions as "single-celling, extremely

limited institutional movement, constant observation, and limited inmate-to-staff and inmate-to-

inmate contact."  COMAR 12.02.08.01B(11).   Tarpley also relies on an ACA guideline that

"[s]ingle cells are required for inmates assigned to maximum custody."  American Correctional

Association, *Standards for American Adult Correctional Institutions* (4th Ed., updated July 1,

2003).   To prove inmates sent to NBCI pose a high risk of violence, Tarpley relies on a

description of inmates NBCI provided him, as well as various statistics and specific instances of

violence that allegedly occurred at NBCI.

Double or triple celling inmates is not per se unconstitutional.  See, e.g., Rhodes v.

Chapman, 452 U.S. 337, 348 (1981).   But overcrowding accompanied by unsanitary or

dangerous conditions can constitute an Eighth Amendment violation, provided an identifiable

human need is being deprived.  See Williams v. Griffin, 952 F.2d 820, 825 (4th Cir.1991) (citing

Wilson v. Seiter, 501 U.S. 194, 304).   While definitions from the Code of Maryland Regulations

and guidelines from institutions such as the ACA "may be instructive in certain cases, they

simply do not establish the constitutional minima; rather, they establish goals recommended by

the organization in question." Bell v. Wolfish, 441 U.S. 520, 543 n.27 (emphasis added); see also

Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 391 n.13 (1992).  When considering claims

that conditions of confinement constitute cruel and unusual punishment, "courts must bear in

mind that their inquiries 'spring from constitutional requirements and that judicial answers to

them must reflect that fact rather than a court's idea of how best to operate a detention facility.'" Rhodes, 452 U.S. at 351 (quoting Bell, 441 U.S. at 539).

Here, Tarpley's challenge to NBCI's policy of double celling fails to meet the objective component of Eighth Amendment liability because he failed to establish NBCI deprived him of an identifiable human need.  The conditions Tarpley describes related to the practice of double-celling are confinement for 22–24 hours per day, lack of indoor recreation, lack of space for personal property, and only one power outlet, cable television outlet, and set of appliances. (ECF No. 1 at 7).  Despite NBCI's possible failure to meet the aspirational guidelines contained in the Code of Maryland Regulations or ACA standards, the conditions Tarpley describes do not demonstrate the deprivation of a human need sufficient to constitute a constitutional violation. See Robinson v. Weisenburger, No. 7:14CV00114, 2015 WL 5023745, at *6 (W.D.Va. Aug. 25, 2015) (holding sleeping on the floor, rarely being released from the cell block, and other "uncomfortable and inconvenient conditions" was insufficient for an Eighth Amendment overcrowding claim despite institution's failure to meet ACA standards).  To the extent Tarpley raises this argument under the Due Process Clause of the Fourteenth Amendment, it likewise fails.  See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001) (holding the standard of deliberate indifference is the same under the Eighth Amendment and Due Process Clause of the Fourteenth Amendment).[2]

Tarpley further asserts Defendants acted with deliberate indifference to his health or safety because they regularly disregard stated intent by his cellmates to harm him when they are

---

[2] For this reason, Tarpley's claims against Defendants fail to establish supervisory liability to the extent Tarpley premises liability on possible violations of the Code of Maryland Regulations or ACA standards.  Supervisory liability, inter alia, requires conduct that posed a pervasive and unreasonable risk of constitutional injury to another.  Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). For the foregoing reasons, the conditions Tarpley describes failed to demonstrate a constitutional injury.

assigned to his cell, or intentionally place inmates in his cell who have indicated their animosity for him because of his race or prior incidents with him.  Tarpley also points to NBCI placing inmates with "severe and untreated mental illness" with him.[3]  In his verified pleadings, Tarpley supports his assertion by relying on six alleged incidents involving his cellmates: A stabbing in September 2006, two attempted rapes in December 2008, an assault in April 2011, threats in May 2012, and refusing a housing assignment with a gang member in December 2013.  (ECF No. 1 at 8-9; No. 24 at 22–23).  In his Response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, Tarpley describes an additional incident involving an officer's threat to house Tarpley with a hostile cellmate in July 2015 and subsequent assault by that cellmate in October 2015 (hereinafter "October 2015 incident").  (ECF No. 24 at 23).

While there is no express period of limitations in the Civil Rights Act, federal courts generally apply the most appropriate state statute of limitations to a claim filed under 42 U.S.C. § 1983.  Wallace v. Kato, 549 U.S. 384, 387 (2007).  Maryland's statute of limitations for personal injury tort actions states that such claims must be filed within three years from the date the claims accrue.  See Md.Code Ann., Cts. & Jud.Proc., § 5-101 (West 2016).  "Although the applicable state statute of limitations supplies the length of the limitations period in a § 1983 action, the time of accrual of the cause of action is a matter of federal law."  Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996) (citing Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)).  "Federal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action."  Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975) (citing Young v. Clinchfield R.R. Co., 288 F.2d 499, 503 (4th Cir. 1961)).

---

[3] There is no evidence in the record Tarpley suffers from any mental illness.

12

Here, the statute of limitations prevents Tarpley from relying on some of the incidents he describes in his verified pleadings.  Tarpley filed his Complaint on March 23, 2015.  (ECF No. 1).  Tarpley, therefore, may only premise his Eighth Amendment claim on conduct that occurred after March 23, 2012.  Tarpley argues the statute of limitations does not apply because all the incidents should be considered together under the continuing tort doctrine.  The continuing tort doctrine applies where "no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm."  Page v. U.S., 729 F.2d 818, 821–22 (1984) (internal quotation omitted).  "A violation is called 'continuing' . . . when it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct."  Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir. 2001).  Here, however, the incidents Tarpley alleges are distinct from each other: some involve incidents of physical violence committed by cellmates, while others involve verbal threats made by cellmates, yet others involve verbal threats made by correctional officers.  (ECF No. 1 at 8–9; No. 24 at 22–23).  Some of the incidents did not even occur at NBCI.  (ECF No. 5-5 at 2).  Thus, the Court concludes the continuing tort theory is inapplicable and Tarpley cannot premise his Eighth Amendment claim on conduct that occurred prior to March 23, 2012.

Tarpley also cannot premise his Eighth Amendment claim on the October 2015 incident. This incident occurred after Tarpley filed his Complaint on July 16, 2015.  (ECF No. 1).  Federal Rule of Civil Procedure 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Tarpley, however, failed to supplement his Complaint under Rule 15(d) to include the October 2015 incident.  Instead, Tarpley simply raised the October 2015 incident in his Response to

Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (ECF No. 24 at 23). It is true that pro se litigants, such as Tarpley, "are entitled to some deference from courts." Ballard v. Carlson, 882 F.2d 93, 96 (4th Cir. 1989). This deference, however, does not provide "special exemption" from the Federal Rules of Civil Procedure. Adkins v. Rice, 842 F.2d 1289, 1289 (4th Cir. 1988) (per curiam) (citing Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981). The deference pro se litigants are entitled to, moreover, generally relates to construing a pro se plaintiff's complaint. See, e.g., Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Finally, the October 2015 incident allegedly involved a correctional officer who is not a defendant in this case. Thus, the Court concludes Tarpley cannot premise his Eighth Amendment claim on the October 2015 incident because he failed to supplement his Complaint under Rule 15(d).

The remaining incidents Tarpley describes collectively fail to meet the objective component of Eighth Amendment liability. Tarpley describes threats made by his cellmate in May 2012 and an unfavorable housing assignment with a gang member in December 2013. (ECF No. 24 at 22–23; No. 24-4 at 3, 9). The only accompanying injuries Tarpley demonstrates are the administrative penalties resulting from his refusal of the housing assignments associated with these incidents. Id. These administrative penalties demonstrate neither a serious physical injury nor a serious emotional injury, nor do they put Tarpley at a substantial risk to either injury. See Danser, 772 F.3d at 346–47 (quoting Farmer, 511 U.S. at 834). Tarpley also describes three incidents, involving other inmates, which occurred in September 2012 and February 2013 where inmates were seriously injured or killed by their cellmate. (ECF No. 1 at 8–9). It appears Tarpley relies on these three incidents, in combination with the May 2012 incident and the December 2013 incident, to argue there is a threat of future violence in violation of his Eighth

Amendment rights.

Prisoners have a right under the Eight and Fourteenth Amendments to be protected from the threat of future violence and sexual assault by their fellow inmates. <u>Woodhous v. Virginia</u>, 487 F.2d 889, 890 (4th Cir. 1973). While an inmate need not wait until he is actually assaulted, he still must show that he is, in fact, being exposed to an existing unreasonable hazard or conditions. <u>Helling</u>, 509 U.S. at 35–36. The hazard must be "sure or very likely to cause serious illness and needless suffering," and give rise to "sufficiently imminent dangers." <u>Helling</u>, 509 U.S. at 33; <u>Baze v. Rees</u>, 553 U.S. 35, 50 (2008). Tarpley has not presented enough evidence to prove either. Three general instances of cellmate violence and two specific instances of potential cellmate violence against Tarpley from 2012 and 2013, at best, amount to "isolated incidents" that fail to demonstrate a sufficient risk of future harm. <u>Shrader v. White</u>, 761 F.2d 975, 978 (4th Cir. 1985) (quoting <u>Withers v. Levine</u>, 615 F.2d 158, 161 (4th Cir. 1980).[4] Thus, under the facts the Court may consider, Tarpley has failed to maintain a claim for violation of his Eighth Amendment rights. The Court will, therefore, grant Defendants' Motion and deny Tarpley's Motion for Reconsideration and Motion to Appointment Counsel.

**B. <u>Motion for Reconsideration</u>**

Tarpley seeks reconsideration of the denial of his request for emergency injunctive relief. The Court's denial of injunctive relief was premised on his admission that his cellmate at the time, Ardale Tickles, did not pose a threat of harm to him. (ECF No. 11). Tarpley's current Motion for Reconsideration is based on the "new fact" that Michael Campbell replaced Tickles

---

[4] Accordingly, Tarpley's claims against Defendants fail to establish supervisory liability to the extent Tarpley premises liability on his cell assignments or risk of future harm. Supervisory liability, <u>inter alia</u>, requires conduct that posed a pervasive and unreasonable risk of constitutional injury to another. <u>Shaw</u>, 13 F.3d at 799. For the foregoing reasons, the conditions Tarpley describes failed to demonstrate a pervasive and unreasonable risk of constitutional injury.

in his cell.  (ECF No. 17 at 3).  Tarpley asserts Campbell is violent and "seriously emotionally disturbed," requiring injunctive relief.  <u>Id.</u>  Tarpley's assertion is based on Campbell's "confrontational demeanor, belligerence toward custody staff, and ill-tempered behavior."  <u>Id.</u> Though Tarpley styled his Motion as a Motion for Reconsideration, the Court will treat it a new Motion for Injunctive Relief because the factual allegations are distinct from those in the previous Motion for Preliminary Injunction.  <u>See</u> <u>Mack v. Turner</u>, No. 5:15-CV-03589, 2016 WL 1733474, at *1 (S.D.W.Va. Apr. 29, 2016).

**1.  Standard of Review**

The Court may grant a temporary restraining order if "specific facts . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed.R.Civ.P. 65(b).  The purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of the lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits."  <u>In re Microsoft Corp. Antitrust Litig.</u>, 333 F.3d 517, 525 (4th Cir. 2003).  The Court applies the same four factors to determine whether a temporary restraining order or preliminary injunction is warranted: 1) the likelihood of success on the merits, 2) whether the movant will face irreparable harm in the absence of preliminary relief, 3) whether the balance of equities favors preliminary relief, and 4) whether an injunction is in the public interest.  <u>See</u> <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008).  All four factors must be satisfied for the plaintiff to receive preliminary injunctive relief.  <u>Pashby v. Delia</u>, 709 F.3d 307, 320 (4th Cir. 2013).

**2.  Analysis**

Here, Tarpley's Motion fails to meet the burden of showing a likelihood of success on the merits.  Campbell's general demeanor, belligerence, and ill temper, as described by Tarpley, is

16

not sufficient evidence to prove Campbell is a hazard that is "sure or very likely" to cause Tarpley "serious illness and needless suffering," or expose Tarpley to "sufficiently imminent dangers." <u>Helling</u>, 509 U.S. at 33; <u>Baze</u>, 553 U.S. at 50.  And for reasons fully explained <u>supra</u>, the Court cannot consider any incidents between Tarpley and Campbell because Tarpley did not supplement his Complaint to include them under Rule 15(d).  Thus, Tarpley's Motion for Reconsideration, construed as a new Motion for Injunctive Relief, will be denied.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF. No. 18) is GRANTED.  Plaintiff's Motion for Reconsideration (ECF NO. 17) and Motion to Appoint Counsel (ECF No. 31) is DENIED.  The Complaint (ECF No. 1) is DISMISSED.  The Clerk shall CLOSE this case.

A separate Order follows.

Entered this 15th day of September, 2016

/s/

_____
George L. Russell, III
United States District Judge